IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Courtney Pauling, | ) | |
| | ) | Civil Action No.  6:05-1372-HMH-BHH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Greenville Transit Authority and | ) | |
| McDonald Transit Associates, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the defendant Greenville Transit Authority's (the "defendant" or "GTA") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1]  The plaintiff has pled claims pursuant to Title VII of the Civil Rights Act of 1964, as amended.  The plaintiff alleges that the defendant discriminated against her on the basis of her race, and in retaliation for her complaints regarding the same.  She has pled the following claims: race discrimination in violation of Title VII; retaliation in violation of Title VII; violation of 42 U.S.C. § 1981; assault; hostile work environment (sexual harassment/race) in violation of Title VII; breach of contract; breach of contract accompanied by a fraudulent act.  The plaintiff has also plead a claim for Assault against the defendant McDonald Transit Authority, Inc.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

The plaintiff is a 30-year-old, black female.  She was employed by the defendant

---

[1]    The defendant McDonald Transit Associates, Inc. ("MTA") has joined the defendant Greenville Transit Authority's motion as to the plaintiff's assault claim.  All other claims against MTA have been previously dismissed.

from April 8, 2003 until her voluntary resignation on March 31, 2005. (Def. Mem. Summ. J. Ex. A at 66.)  During her entire employment with the defendant, the plaintiff was a part-time bus operator. (*Id*. Ex. C ¶ 9, Ex. B at 10.)

The defendant is a special purpose district created in accordance with S.C. Code § 58-25-10, *et seq*., which provides public transportation in Greenville County, South Carolina. (Def. Reply Supp. Summ. J. Ex. E.)  By virtue of a management and operations contract, the defendant is managed by employees of the defendant MTA. (Def. Mem. Summ. J. Ex. E ¶ 2.)

The plaintiff alleges that the defendant's General Manager, Judy Dudley, and a regional supervisor, Tim Lett, made various discriminatory remarks that created a hostile work environment.  Lett and Dudley are both employees of MTA. (Def. Mem. Summ. J. Ex. C ¶ 1 & E ¶ 1.)  The plaintiff has also alleged that she has been treated differently than similarly-situated white employees in regards to various issues including, but not limited to, the selection of bus routes and application for an Information Specialist position.[2]

On April 22, 2004, plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) alleging discrimination on the basis of race, as well as retaliation. (*Id*. Ex. 13 to Ex. A.)  The plaintiff, however, had never filed any grievances with the defendant concerning any allegations of race discrimination. (Def. Mem. Summ. J. Ex. A at 22-24, 45, 53, 54, 61, 62, 71, 78.)

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[2]   These allegations have been virtually ignored by the plaintiff on summary judgment.

2

> there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

3

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

As stated, the plaintiff pled in her amended complaint the following claims against the defendant: (1) race discrimination (disparate treatment) in violation of Title VII; (2) retaliation in violation of Title VII; (3) violation of 42 U.S.C. § 1981; (4) assault; (5) hostile work environment (sexual harassment) in violation of Title VII; (6) breach of contract; and (7) breach of contract accompanied by a fraudulent act. The defendant has moved for summary judgment as to each. The plaintiff also has pending an assault claim against MTA. The plaintiff has only responded in support of four of her original claims: hostile work environment (race); breach of contract; breach of contract accompanied by a fraudulent act; and assault.

In response to the defendant's motion and proffer of evidence, the plaintiff has made absolutely no rejoinder or proffer as to her claim for race discrimination (disparate treatment), hostile work environment (sexual harassment); retaliation,[3] or violation of 42 U.S.C. § 1981 or her claim against MTA for assault. The Court, therefore, considers those claims as abandoned. Moreover, the Court has considered the defendant's evidence in

---

[3] The plaintiff summarily states that her evidence of a hostile work environment claim supports her claim for retaliation. As discussed briefly *infra*, it unequivocally does not.

regards to these abandoned claims and finds that summary judgment is appropriate, as no genuine issues of fact remain.  It is not the Court's responsibility to comb the record either for supporting evidence or to craft arguments for a party.  Rule of Civil Procedure 56 and Local Rule 7.05(A) place that burden squarely on the parties themselves to fashion salient legal arguments and to direct the Court to any legal or evidentiary materials in support.  *See* Fed. R. Civ. P. 56; DSC Local Civil Rule 7.05.

## I.     Hostile Work Environment

As an initial matter, it should be noted that the plaintiff originally pled a hostile work environment claim based on alleged sexual harassment.  Without any express amendment to the Complaint, the plaintiff now argues that she was subjected to a hostile work environment based upon her race.  Nevertheless, the Court has considered the claim as presently postured by the parties and, as discussed below, finds that no genuine issues of fact remain.

To state a claim for hostile work environment, the plaintiff must show that: (1) the harassment was unwelcome; (2) the harassment was based on her race or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998); *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772(4th Cir.1997).

The harassment must be both objectively and subjectively severe or pervasive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21(1993). The objective severity or pervasiveness of the harassment is judged from the perspective of a reasonable person in the plaintiff's position. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81(1998).  Whether an environment is hostile or abusive depends on factors such as: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

5

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

In support of her claim, the plaintiff contends that three comments, two by Judy Dudley, the defendant's General Manager, and one by Tim Lett, McDonald Transit Associate's regional manger, respectively, constitute the hostile work environment of which she now complains.

The first was allegedly made by Dudley at an October 2003 company meeting. In response to a question about the effect of new insurance rates on the families of GTA employees, the plaintiff alleges that Dudley stated, "GTA is not responsible or worried about your families." (Def.'s Mem. Summ. J. Ex. A 33, 38, 39.) The plaintiff also contends that at a company meeting in either late 2003 or early 2004 Dudley was asked whether or not employees would receive a pay raise. Dudley allegedly responded, "'No, there is no money for you. We do not have money for you. GTA doesn't have the money to do this. It's not in the budget this year to do this and that" and then purportedly laughed. (*Id.* at 35, 51.)

Finally, the plaintiff claims that Lett also made a racially discriminatory remark. Specifically, she testified:

> I was getting off my bus and walking towards the dispatch booth. At that time, Cindy Poston was dispatching. She was coming out of the booth to talk to Tim Lett and Frank [Curty, a Director of Development]. They were sitting in the car and she came up on the driver's side and said, "Hello, how are y'all doing? Why are y'all not getting out?" He [Lett] said, "I don't speak to these people."

(*Id.* at 37.)

Even giving every conceivable inference to the plaintiff, these remarks do not constitute a hostile work environment.

First, the Court cannot possibly characterize these remarks as harassment based upon the plaintiff's race. *See Causey*, 162 F.3d at 801. On their face they have absolutely nothing to do with race and it is virtually incredible to claim otherwise. But, even taken in their context, there is no evidence that the remarks would assume some implicitly pejorative intent based upon race. To wit, the plaintiff has admitted that there were whites and blacks present when Dudley made her comments. (*See* Def. Mem. Summ. J. Ex. A 34, 38, 51.) Such comments, therefore, were generally applicable to all present regardless of race. Similarly, the plaintiff has submitted no evidence that Lett's remark was made in regards to only African-Americans. (*Cf. id*. at 61 ("Q: Who else was present for him to be referring to 'these people,' in your mind? A: "The drivers, all the buses were in, passengers getting on and off the buses.") Yet, even were Dudley and Lett directing their comments to an exclusively African-American audience, the Court simply rejects that a reasonable jury could conclude that the comments were motivated by the plaintiff's race, as is required. *Hartsell*, 123 F.3d at 772.

Relying on a Western District of New York decision, *Davis v. Verizon Wireless*, 389 F. Supp. 2d 458, 471 (W.D.N.Y 2005), the plaintiff responds that whether phrases like "you people," "those people," "they," or "them," are discriminatory, when used to describe or address a predominately African-American workforce, is a jury issue. The Court notes, as a rudimentary matter, that the *Davis* decision has no binding authority on this Court and is, at best, persuasive as the opinion of a single sister court.

More importantly, *Davis* is materially distinguishable from the facts at issue in this case. Namely, the conclusion in *Davis,* that such phrases were actionable, was expressly predicated on the fact that the plaintiff's supervisor had also "allegedly used the racial epithet 'nigger' in the workplace on other occasions." *Id*. at 471. No such comparable context exists in this present case. The plaintiff has not identified any other statements that

7

even remotely insinuate invidious sentiments, as in *Davis*. As stated, the Court simply disagrees with the plaintiff, and *Davis* to the extent that it would recommend otherwise, that a reasonable jury could find the three statements identified by the plaintiff were made on account of race.

The Court also notes that the remarks were not directed at the plaintiff, specifically, but were made, if at all, to, or about, a group of people. *See Jennings v. University of North Carolina, at Chapel*, 444 F.3d 255, 272 (4th Cir. 2006). The Fourth Circuit has denied relief on the basis of such evidence and has held that such remarks, if harassing at all, are necessarily less objectionable. *See id*; (citing *White v. Federal Express Corp.*, 939 F.2d 157, 161 (4th Cir.1991); *Hopkins v. Baltimore Gas & Electric Co.*, 77 F.3d 745, 754 (4th Cir.1996)). The plaintiff has failed to present any evidence suggesting that the alleged comments were motivated by her race. There is no allegation that Dudley or Lett ever made any derogatory comments about her race, and nothing about their conduct suggests it was based on such a factor. *See Causey*, 162 F.3d at 801.

Lastly, no reasonable jury could find from the evidence of record that such remarks, even if true and, for argument's sake – harassing, were severe or pervasive such that they altered the conditions of employment and create an abusive atmosphere. *See Causey*, 162 F.3d at 801. In order to find this third element of a hostile work environment claim, the Court must consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Isolated or scattered remarks do not permeate the work environment with discriminatory insult and abuse and for this reason do not amount to "discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted) (noting that isolated incidents of abusive

8

language will generally not meet requisite threshold of severity or pervasiveness); *see also Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80-82 (1998)). These three isolated remarks certainly are not pervasive and, to the extent they harbor some slight discriminatory meaning, they surely cannot be considered severe in that regard. *See, e.g., Snell v. Suffolk Cty.*, 782 F.2d 1094, 1103 (C.A.2 1986) ("To establish a hostile atmosphere, . . . plaintiffs must prove more than a few isolated incidents of racial enmity"); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (C.A.8 1981) (no violation of Title VII from infrequent use of racial slurs). The remarks identified by the plaintiff are simply insufficient to satisfy the "severe or pervasive" element of her claim. *See Faragher,* 524 U.S. at 788(1998).

To establish a hostile environment claim, the plaintiff must show that "but for" her race, she would not have been the victim of the alleged discrimination. *Hartsell*, 123 F.3d at 772. She has simply failed to do so.[4]

The plaintiff claims that the remarks identified above also establish her claim for retaliation. This suggestion is untenable. The remarks say nothing about a Title VII claim of retaliation. *See* 42 U.S.C. § 2000e-3(a)*; EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005); *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004). The plaintiff has made no effort to tie her thin evidentiary proffer to the legal elements of her claim. If such a correlation can be made at all in this case, it is certainly not the Court's job to do so.

---

[4] The plaintiff has wholly failed to make any proffer of evidence in regards to her originally pled sexual harassment claim. For all the same reasons as discussed above, the sexual harassment claim should be dismissed. Moreover, the plaintiff did not file a charge of sexual harassment with the South Carolina Human Affairs Commission (SCHAC) or the Equal Employment Opportunity Commission (EEOC) within 300 days of the allegedly unlawful harassment, as required, *see* 42 U.S.C. 2000e-5(e)(1). (Def. Mem. Summ. J. Ex. A at 92.) Therefore, it is barred.

## II.    Breach of Contract (Wrongful Discharge) Claim

The plaintiff next claims that the defendant breached its employment contract with her.  It is undisputed that the plaintiff was an at-will employee and that normally such an employee can have no claim for breach of any employment contract.  South Carolina, however, recognizes an "employee handbook" exception to the employment at will doctrine. *See Conner v. City of Forest Acres*, 348 S.C. 454, 464, 560 S.E.2d 606, 610 (2002). "[W]here the at-will status of the employee is altered by the terms of an employee handbook, an employer's discharge of an employee may give rise to a cause of action for wrongful discharge." *Id*. The stated policy supporting this exception is that "[i]t is patently unjust to allow an employer to couch a handbook, bulletin, or other similar material in mandatory terms and then allow him to ignore these very policies as 'a gratuitous, nonbinding statement of general policy' whenever it works to his disadvantage." *Small v. Springs Indus., Inc.*, 292 S.C. 481, 485, 357 S.E.2d 452, 455 (1987).

The issue of whether an employee handbook is a contract that alters the employee's at-will status should be decided by a jury when the "contract's existence is questioned and the evidence is either conflicting or is capable of more than one inference." *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 697 (S.C. 2005).  However, "a 'court should intervene to resolve the handbook issue as a matter of law . . . if the handbook statements and disclaimer, taken together, establish beyond any doubt tha[t] an enforceable promise does or does not exist." *Id*. (alterations in original) (quoting *Fleming v. Borden, Inc.*, 450 S.E.2d 589, 596 (S.C. 1994)).  *Hessenthaler* thus indicates that judgment as a matter of law would be inappropriate when there is no disclaimer or when the language is mandatory rather than permissive.

The plaintiff does not contest that a bold, clear, and conspicuous disclaimer appears on the first page of the defendant's Employee Handbook (Pl. Mem. Opp. Summ. J. Ex. 2).

10

*See Marr v. City of Columbia*, 416 S.E.2d 615, 616 (S.C. 1992). Rather, the plaintiff states that the following language is mandatory and, therefore, has created a binding promise: GTA "provides an atmosphere which will promote professional and personal growth without regard to race, color, creed, national origin, sex, age, disability, or veteran status." (Id.) The plaintiff has identified no other mandatory language or suggested how any other alleged promises in the handbook might have been breached.

First, this provision is not the type of mandatory language contemplated by *Hessenthaler*. *See Hessenthaler*, 616 S.E.2d at 698. *Hessenthaler* provides recourse for employees in situations where a disclaimer is contradicted by mandatory procedures, to wit, those related to discipline or other remedial action – "procedures [that] impose a limitation on the employer's right to terminate an employee at any time, for any reason." *Id.*; *see, e.g., Conner*, 560 S.E.2d at 611 (holding that a handbook containing both disclaimers and a mandatory discipline procedure created a jury issue); *Leahy v. Starflo Corp.*, 431 S.E.2d 567, 568 (S.C. 1993) (holding that an employer was contractually bound by the mandatory disciplinary procedure).

Instead of being mandatory, the language recited by the plaintiff in this case is aspirational in nature – what the defendant would strive to provide, generally. In fact, the statement indicates that the defendant will "promote" an atmosphere free of discrimination; it does not guarantee such an atmosphere. (Pl. Mem. Opp. Summ. J. Ex. 2 at 7-8.) The South Carolina Supreme Court has explicitly held that such general EEO statements do not alter the at-will relationship or give rise to a breach of contract claim. *Hessenthaler*, 616 S.E.2d at 698 ("Unlike a mandatory, progressive discipline procedure, a general policy statement of nondiscrimination does not create an expectation that employment is guaranteed for any specific duration or that particular process be followed . . . .").

11

Second, and most critically, the plaintiff has produced no evidence of any breach of such a promise. The Court has already rejected that the three statements discussed above have any discriminatory quality or otherwise create a hostile work environment. The plaintiff has not directed the Court to any other evidence of discrimination or even alleged as much. Assuming *arguendo* that the cited language of the handbook is mandatory and binding, it has simply not been breached.

### III. Breach of Contract Accompanied by a Fraudulent Act

The plaintiff states that she "believes that sufficient evidence exists that would permit a reasonable factfinder to determine that Defendant breached its contract with Plaintiff and committed fraudulent acts in connection with the breach." (Pl. Mem. Opp. Summ. J. at 9.)

To recover for breach of contract accompanied by a fraudulent act, a plaintiff must show: "(1) a breach of contract; (2) fraudulent intent relating to the breach of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." *Harper v. Ethridge*, 119, 348 S.E.2d 374, 378 (S.C. Ct. App. 1986) (citing *Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502 (S.C. Ct. App. 1985)).

Because the Court has concluded that the Employee Handbook was not a binding contract, the plaintiff necessarily cannot base a claim of breach of contract accompanied by a fraudulent act on that document. Moreover, there is no evidence of any breach, even were there a contract. Accordingly, the plaintiff cannot satisfy the initial element of her claim.

Moreover, her speculation concerning the fraudulent intent or acts of the defendant is insufficient to satisfy the second or third elements as well. The plaintiff's simple belief is of no consequence. A plaintiff cannot defeat summary judgment by relying on "mere speculation." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Genuineness, including the genuineness of an issue of state of mind, requires that the

12

plaintiff's evidence "create a fair doubt; wholly speculative assertions will not suffice." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). The plaintiff has produced no evidence of any fraudulent acts nor has she even alleged any such acts.

## IV.    Assault

Finally, the plaintiff claims that she was assaulted by the defendant's agent and General Manager, Judy Dudley. The plaintiff contends that during an employee meeting Dudley leapt across a table in a menacing fashion toward the plaintiff, who was eight months pregnant at the time, causing her to reasonably fear bodily harm. The plaintiff alleges that she asked about the defendant's para-transit program and Dudley, in response, "came across the table and said, 'Nobody wants to hear that.'" (Def. Mem. Summ. J. Ex. A at 19-24.)

The defendant responds that no such event occurred but, regardless, the plaintiff's claim is barred by the exclusivity provisions of the South Carolina Worker's Compensation Act ("SCWCA"), S.C. Code § 42-1-10, *et seq*.

The Court has reviewed the evidence of the parties and believes that the plaintiff, by her own testimony, has at least created a genuine issue of fact as to the common law elements of assault (*see, e.g.*, Def. Mem. Summ. J. Ex. A at 88 ("And she came across the table in a way that I had to jump back like this to keep her from striking me."). *See Gathers v. Harris Teeter Supermarket, Inc.*, 317 S.E.2d 748,754-55 (S.C. Ct. App. 1984) (elements of assault). The only issue, therefore, is whether or not the exclusivity provisions of the SCWCA, in fact, bar the claim against the defendant.

"The South Carolina Worker's Compensation Statute provides the exclusive remedy for employees who sustain work related injury." *Dickert v. Metropolitan Life Ins. Co.*, 428 S.E.2d 700, 701 (S.C. 1993). Assault claims fall within the scope of the Act. *Id*. "It is only when the tortfeasor/co-employee is the 'alter ego' of the employer that liability falls outside

13

the scope of the Act." *Id*. Only "'dominant corporate owners and officers'" may constitute alter egos." *Id*. The definition of alter ego does not include "supervisory employees." *Id*. Accordingly, the defendant would only be liable to the plaintiff for Dudley's alleged actions if Dudley can be considered a dominant corporate owner or officer. Since *Dickert*, South Carolina courts have given very little additional texture to the definition of what constitutes a dominant corporate owner or officer.

In support of her claim that Dudley is the alter-ego of the defendant, the plaintiff has produced one unidentified document that includes in the upper right-hand corner the following phrase: "Chief Executive Officer Keith Godwin General Manager." (Pl. Mem. Opp. Summ. J. Ex. 1.) The plaintiff contends that this document is evidence that traditionally the general manager of GTA has been considered its CEO. The plaintiff also emphasizes that Dudley is the only individual authorized to approve an employee's promotion within the company. (See Def. Mem. Summ. J. Ex. C ¶ 2.) The defendant responds that the document relied upon by the plaintiff was never produced in discovery, notwithstanding a request for all documents related to the plaintiff's assault claim, and it is not probative in any respect as to whether Dudley is, in fact, a dominant officer.

The Court finds that the plaintiff has failed to produce any evidence that would create a genuine issue of fact as to whether Dudley is a dominant officer. As an initial matter, the defendant is a public regional transportation entity created pursuant to Chapter 25, Title 58 of the South Carolina Code. *See* S.C. Code §58-25-10, *et seq*. Pursuant to its enabling legislation and a concomitant local ordinance, the defendant is governed by a board of authority. *See* S.C. Code § 58-25-40; (Def. Reply Supp. Summ. J. Ex. B ¶ 2 & E). Critically, Section 58-25-40 states that the board of authority "shall elect one of its members as chairman, one as vice-chairman, *and other officers* as may be necessary, to serve for

14

one year in that capacity or until their successors are elected and qualify." S.C. Code § 58-25-40 (emphasis added).

There is no evidence of record that Dudley has been elected, pursuant to the enabling legislation and by the board of authority, as an officer of the defendant. In fact, the only evidence before the Court is that Dudley is the General Manager of the defendant but an "employee" of McDonald Transit Associates, Inc., the company hired to manage the defendant. (Def. Mem. Summ. J. Ex. C ¶ 1; Def. Reply Supp. Summ. J. Ex. B ¶ 1.) She has sworn that she is not, nor has she ever been, the Chief Executive Officer of GTA. (Def. Reply Supp. Summ. J. Ex. B ¶ 3.) The plaintiff, however, has produced no evidence to the contrary that the plaintiff is, in fact, an officer of the defendant as contemplated by Section 58-25-40. The single document she has produced simply does not suggest otherwise.

Accordingly, the plaintiff's claim for assault against the defendant is barred by the SCWCA.[5]

## V.    Other Claims

As stated, the plaintiff has wholly failed to respond to the defendant's arguments regarding her claims for race discrimination (disparate treatment), hostile work environment (sexual harassment); retaliation, or violation of 42 U.S.C. § 1981. Previously in this report and recommendation, the Court has already indicated why the plaintiff's retaliation and sexual harassment claims fail as a matter of law. The Court makes the following brief comments regarding the plaintiff's disparate treatment and Section 1981 claims, which she has made no effort to defend on summary judgment.

---

[5] The plaintiff has made no argument or proffer of evidence regarding MTA's liability for assault whatsoever. That claim, therefore, should also be dismissed. The Court, however, makes no finding as to the effect of the SCWCA on the plaintiff's assault claim against MTA.

15

A Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

As indicated, the plaintiff has not employed either avenue.[6] The defendant, however, has met its initial burden of demonstrating to the Court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Specifically, the defendant has submitted evidence that the plaintiff cannot establish a *prima facie* case of discrimination pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Specifically, the defendant's evidence indicates that the plaintiff cannot identify any similarly situated individuals who were treated differently. (See Def. Mem. Supp. Summ J. at 9, 12, Exs. A at 24, B at 49, C ¶ 7, D ¶ 2.) The plaintiff also cannot establish that she timely applied for the Information Specialist position, which she was allegedly denied. (*Id*. Ex. A II at 30 (testifying that she was informed that the position had already been filled when she expressed her interest.)

---

[6] The plaintiff's failure to argue her disparate treatment claim makes it virtually impossible for the Court to analyze it. The Court will not guess as to her claims nor will it speculate as to any arguments in support.

16

Even assuming that the plaintiff could establish a *prima facie* case of disparate treatment, she has made no effort to rebut the defendant's legitimate non-discriminatory reasons for its actions that the plaintiff was unqualified for certain positions, a part-time bus operator with little seniority to select bus routes, and applied for positions which were not available at the time of her request.  Her failure to meet the plaintiff's proffer with any evidence or argument is fatal to whatever disparate treatment claim she may have had. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).[7]

The plaintiff has made some conclusory statements throughout her brief regarding disparate treatment but she may not rely on these cursory remarks or the allegations in her complaint.  Unsupported and speculative opinions are simply insufficient to create a material question of fact to avoid summary judgment.  *See Dockins v. Benchmark Communications*, 176 F.3d 745, 748 (4th Cir. 1999).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment be GRANTED, as to all claims pending against the defendant Greenville Transit Authority, and, further, that her assault claim against McDonald Transit Authority be DISMISSED.

IT IS SO RECOMMENDED.

s/Bruce H.  Hendricks
United States Magistrate Judge

October 16, 2006
Greenville, South Carolina

---

[7]  For all theses same reasons, the plaintiff's 42 U.S.C. § 1981 claim, which she makes no effort to support, must fail. *See Gairola v. Virginia Dep't of General Services*, 753 F.2d 1281, 1285 (4th Cir. 1985).